# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| Bethani LEE, as Personal Representative of the Estate of Jonee Adair Lee-Livingston, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO. 5:10-CV-361 (MTT) |
| MYLAN INC., *et. al*, | )<br>)<br>) |
| Defendants. | )<br>) |

## ORDER

This matter is before the Court on the Defendants' Motion to Dismiss (the "Motion") (Doc. 4). For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

### I.  FACTUAL BACKGROUND

Plaintiff Bethani Lee brings this action for the death of her mother, Jonee Adair Lee-Livingston.[1] On October 2, 2008, Ms. Lee-Livingston's doctor prescribed for her 25 mcg/hr Mylan fentanyl transdermal system ("MFTS") patches manufactured by the Defendants. On October 12, 2008, Ms. Lee-Livingston died, according to a medical examination, of fentanyl toxicity.

---

[1] On April 13, 2011, the Defendants filed their Supplemental Motion to Dismiss or, in the alternative, Motion for Summary Judgment, contending that the Plaintiff's Complaint should be dismissed because "[d]iscovery has revealed that the Decedent has a surviving spouse, and, therefore Plaintiff's Complaint must be dismissed because she lacks standing to sue pursuant to O.C.G.A. § 51-4-2." (Doc. 27, at 2). Of course, even if this is true, the Plaintiff, as the personal representative of her mother's estate, would still be the proper party to pursue the claims held by her mother's estate. Whether or not the Plaintiff is the real party in interest with regard to the wrongful death claim arising from her mother's death will have to be sorted out later.

MFTS patches have been approved by the Federal Drug Administration and can only be obtained by prescription. MFTS patches, used to relieve pain, come in 25, 50, 75, and 100 mcg/hr dosages. MFTS patches are applied directly to the skin and release fentanyl into a patient's blood stream.

The Plaintiff claims that numerous patients, including her mother, have received lethal doses of fentanyl from using the MFTS patches as prescribed and that the Defendants knew or should have known the drug could cause serious injury and/or death. In short, the Plaintiff claims that her mother died because the MFTS patches released lethal doses of fentanyl.

The Plaintiff brings this action against the Defendants for strict liability (Counts I-III); negligence (Count IV); negligent misrepresentation (Count V); breach of implied warranty of fitness for a particular purpose (Count VI); breach of implied warranty of merchantability (Count VII); and breach of express warranty (Count VIII). The Defendants argue that all claims should be dismissed. Specifically, they allege the Plaintiff failed to plead her claims with sufficient detail, the learned intermediary doctrine bars the negligent misrepresentation and breach of warranty claims, and lack of privity of contract bars the breach of warranty claims.

## II.   DISCUSSION

A. Sufficiency of Pleadings

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules

employ a notice pleading standard, which requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, __ U.S. at __, 129 S. Ct. at 1949. A pleading containing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (citation omitted).

The Defendants argue that this action should be dismissed pursuant to *Twombly* and *Iqbal* because the Plaintiff "merely … provid[ed] conclusory averments that recite the bare elements of a cause of action." (Doc. 4, at 3). However, it is clear the Plaintiff has alleged sufficient facts to put the Defendants on notice of her claims and the grounds upon which they rest. With regard to claims based upon a defective product, according to the Complaint, on October 2, 2008, Ms. Lee-Livingston's doctor prescribed for her 25 mcg/hr MFTS patches. Ten days later, she died of fentanyl toxicity. These facts allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. With regard to claims based upon a failure to communicate, the Plaintiff alleges the Defendants knew or had reason to know of the dangers associated with the MFTS patches. With regard to claims based upon affirmations of fact or promises, the Plaintiff claims the Defendants represented the MFTS patches were safe and effective.

Moreover, the claims cannot be dismissed pursuant to *Twombly* and *Iqbal* because there is no "'obvious alternative explanation.'" *Iqbal*, __ U.S. at __, 129 S. Ct.

at 1951-52 (quoting *Twombly*, 550 U.S. at 567).  The Court in *Twombly* attributed the defendants' actions to lawful, free-market conduct, and not a conspiracy.  Also, the Court in *Iqbal* believed arrests of Arab Muslims were "likely lawful and justified by [the Director of the FBI's] nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts."  *Iqbal*, __ U.S. at __, 129 S. Ct. at 1951.  Here, the Plaintiff's mother died of fentanyl toxicity ten days after she began using a patch manufactured by the Defendants that contained fentanyl.  There is no obvious alternative explanation of how fentanyl entered Ms. Lee-Livingston's blood stream.  Thus, the allegation that some defect in the MFTS patches caused Ms. Lee-Livingston's death is a plausible conclusion.

Accordingly, because the Complaint gives the Defendants fair notice of what her claims are and the grounds upon which they rest, her claims cannot be dismissed pursuant to *Twombly* and *Iqbal*.

B.  Learned Intermediary Doctrine

A more difficult issue is whether the learned intermediary doctrine bars the Plaintiff's negligent misrepresentation and breach of warranty claims.  Generally, a manufacturer is responsible for failing to warn an end user of the known risks or hazards of its products.  However, pursuant to Georgia's learned intermediary doctrine, a prescription drug manufacturer "'does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.'"  *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010) (quoting *McCombs v.*

*Synthes (U.S.A.)*, 277 Ga. 252, 253, 587 S.E.2d 594, 595 (2003)). The rationale behind the doctrine is that the patient's doctor is in a better position than the manufacturer to warn the patient of potential dangers. *McCombs*, 277 Ga. at 253, 587 S.E.2d at 595.

To prevail on a negligent misrepresentation claim, a plaintiff must show "'(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" *Marquis Towers, Inc. v. Highland Group*, 265 Ga. App. 343, 346, 593 S.E.2d 903, 906 (2004) (quoting *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727, 729 (1997)). The Plaintiff also brings three claims for breach of warranties, one express and two implied. An express warranty is created by any affirmation of fact or promise made by the seller to the buyer which relates to the goods, description of the goods, or sample or model that is made a part of the basis of the bargain. O.C.G.A. § 11-2-313(1). O.C.G.A. § 11-2-314 creates an implied warranty that goods will be merchantable if the seller is a merchant. O.C.G.A. § 11-2-315 creates an implied warranty of fitness for a particular purpose if the seller has reason to know the particular purpose for which the goods are required and if the buyer has relied on the seller's skill or judgment to select the goods.

The Defendants place much emphasis on the reliance elements, or what they say are the reliance elements, of the Plaintiff's negligent misrepresentation and breach of warranty claims. They argue that the Plaintiff's mother could not have reasonably relied on any representations made by them because the learned intermediary doctrine legally precludes such reliance. The Plaintiff primarily argues that in order to invoke the

learned intermediary doctrine, a defendant must first prove that its warning to the doctor was adequate.[2]

Neither argument quite hits the mark. The learned intermediary doctrine bars any claim based upon an alleged failure to warn the patient. Although the doctrine recognizes the manufacturer's duty to warn the learned intermediary, it clearly eliminates any duty on the part of the manufacturer to warn a *patient*. The doctrine does not accomplish its goal by precluding reliance; it simply eliminates any duty to warn patients.

Further, the doctrine is not limited to failure to warn claims. It encompasses any claim based upon the failure of the manufacturer to provide the patient with correct or necessary information concerning the use of the product. *See, e.g.*, *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) ("It is clear that Georgia courts would find the 'learned intermediary rule' encompasses any fraud, fraudulent concealment, misrepresentation, failure to warn or breach of warranty claims related to the sale and use of prescription drugs."). By definition, a negligent misrepresentation claim, to the extent it is based upon misrepresentations to the patient, is based upon information imparted or not imparted to the patient. Similarly, to the extent a breach of warranty claim is based upon inadequate labeling or any failure on the part of the manufacturer to

---

[2] The Plaintiff's argument apparently is derived from *Dietz*, in which the Court said "[i]n most cases, a court begins its inquiry under this doctrine by determining whether the manufacturer provided the learned intermediary with an adequate warning." 598 F.3d at 816. However, *Dietz* does not hold that an adequate warning is a prerequisite for the learned intermediary doctrine to apply. At issue in *Dietz* was the adequacy of the warning to the physician, rather than a warning to a patient. Because the manufacturer has a duty to warn the learned intermediary, the Court in *Dietz* logically began its analysis with the question of whether the warning to the physician was adequate. Here, the Plaintiff asserts that the Defendants failed to warn, among others, her mother. If the Defendants had no duty to warn her mother, then there is no need to test the adequacy of such a warning.

provide information to the patient, rather than to her doctor, it almost certainly falls within the scope of the learned intermediary doctrine. Incidentally, and although not argued by the Defendants, the same reasoning applies to the Plaintiff's strict liability and negligence claims if they are based upon the failure to provide information about the use of the product to the Plaintiff's mother. Accordingly, in the present case, the Plaintiff's negligent misrepresentation and breach of warranty claims, to the extent they are based upon failure to provide accurate or sufficient information regarding the use of MFTS patches to her mother, are barred by the learned intermediary doctrine.

This does not mean, however, that the Plaintiff's negligent misrepresentation and breach of warranty claims must be dismissed in their entirety. This is because the Plaintiff does not base these claims entirely on the failure to provide accurate or sufficient information to her mother. Rather, for example, the Plaintiff alleges in her negligent misrepresentation claim that the Defendants "failed to communicate to the FDA, Decedent, physicians, distributors, pharmacists, and/or the general public that the use of this drug could cause serious injury and/or death." (Doc. 1, at 9). While the learned intermediary doctrine clearly would bar any negligent misrepresentation claims based upon a failure "to communicate to" the Plaintiff's mother, the Defendants' motion and the Parties' briefs do not address whether the Plaintiff can state a claim based upon negligent misrepresentations to others,[3] and the Court declines to go down that path on its own.

---

[3] For example, can the Plaintiff state a claim for "fraud on the FDA?" *See Jones v. Sofamor S.N.C.*, 1999 WL 1062103, at *8 (N.D. Ga. 1999) (analyzing "fraud on the FDA" claim). Also, Georgia law likely recognizes an "indirect fraud claim." *Florida Rock & Tank Lines, Inc., v. Moore,* 258 Ga. 106, 365 S.E.2d 836 (1998).

In sum, the Court agrees that the Plaintiff cannot base her negligent misrepresentation claim or her breach of warranty claims on the alleged failure of the Defendants to provide accurate or sufficient information regarding the use of MFTS patches to the Plaintiff's mother. However, these claims cannot be dismissed in their entirety, at this point, because they are not entirely based upon the failure to provide accurate or sufficient information to the Plaintiff's mother.[4]

C. Privity of Contract

The Defendants also argue the Plaintiff cannot prevail on any breach of warranty claims because Ms. Lee-Livingston was not in privity of contract with them. Many states have eliminated the requirement of vertical privity,[5] but Georgia law still generally precludes the ultimate consumer from recovering on any express or implied warranty when the manufacturer sells the product to the original consumer, e.g. a retailer. However, Georgia courts recognize an exception to this general rule. If the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist. *Jones v. Cranman's Sporting Goods*, 142 Ga. App. 838, 842, 237

---

[4] As noted, the Defendants limit their learned intermediary doctrine argument to the Plaintiff's claims for negligent misrepresentation and breach of warranty. Yet, other counts of the Plaintiff's complaint are based, in part, on the alleged failure by the Defendants to provide accurate or sufficient information to the Plaintiff's mother. Thus, the Court will not allow the Plaintiff to base any of her claims on allegations that the Defendants failed to provide accurate or sufficient information regarding the use of MFTS patches to her mother.

[5] Vertical privity is defined as "the chain of distribution of the product from the manufacturer through the wholesaler, retailer, and the ultimate buyer." 18 Williston on Contracts § 52:41. This is not to be confused with horizontal privity, or the relationship "between the seller and a person who used the product other than the ultimate buyer." 18 Williston on Contracts § 52:40. Georgia has a statutory provision that extends horizontal privity to "any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty." O.C.G.A. § 11-2-318.

S.E.2d 402, 405 (1977) ("[I]n this state privity is required in order to impose liability under the theory of express or implied warranty. Nevertheless, this court has held: Where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and [O.C.G.A. § 11]-2-314 becomes operative.") (quotations and citation omitted); *Evershine Products, Inc. v. Schmitt*, 130 Ga. App. 34, 35, 202 S.E.2d 228, 231 (1973) ("[I]f a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant *to the original purchaser*, such as distributor or retailer from whom plaintiff purchased the product….This does not mean, however, that there can be no warranties if the manufacturer or producer makes an express warranty *to the ultimate consumer*. This is commonly done in the sale of a number of items, such as automobiles and household appliances, etc.") (emphasis added) (internal citations omitted). Thus, under Georgia law, privity of contract between the manufacturer and ultimate consumer is established when the manufacturer extends an express warranty to the ultimate consumer.

Once privity is established, a plaintiff may bring claims for breach of the implied warranties of merchantability and fitness for a particular purpose. *Jones*, 142 Ga. App. at 842, 237 S.E.2d at 406 (reversing summary judgment on implied warranty claim because privity existed and implied warranties were not expressly excluded); *Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 132 Ga. App. 435, 437, 208 S.E.2d 321, 323-24 (1974) ("While ordinarily under [O.C.G.A. § 11]-2-314 there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that

no privity of contract exists between the two. However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and [section 11]-2-314 becomes operative.").

The Court recognizes that many Georgia cases can be read to suggest a no exception rule that an ultimate consumer cannot sue a manufacturer for breach of warranty when a middleman stands between the consumer and manufacturer. Generally, these cases can be traced to *Stewart v. Gainesville Glass Co., Inc.*, 131 Ga. App. 747, 206 S.E.2d 857 (1974) -- the first case to cite *Schmitt*, which clearly recognized that the ultimate consumer could, in limited circumstances, sue a manufacturer for breach of warranty. In *Gainesville Glass*, Judge Eberhardt, writing for the majority, cited *Schmitt* for the proposition that a subsequent consumer cannot recover on the warranty made to the initial consumer. 131 Ga. App. at 751, 206 S.E.2d at 859. However, the majority has become overshadowed by the colorful John Jones' hammer example in Judge Evans' concurrence:

> To make it very plain, if John Jones purchases goods from a hardware store, and the goods are completely worthless, he cannot go back on the manufacturer, simply because he did not purchase directly from the manufacturer. If some middleman sells the product to the purchaser, as is almost always the case, then the purchaser may as well forget express warranty or implied warranty by the manufacturer, because of a lack of privity. Judge Pannell makes this quite clear in the case of *Schmitt*….

-10-

131 Ga. App. at 753, 206 S.E.2d at 860-61.  However, that is not quite what Judge Pannell said, or at least that is not a full statement of what Judge Pannell said.  *Schmitt* makes three things clear: (1) Georgia law requires privity of contract; (2) subsequent consumers may not recover on the warranty to the initial consumer because there is no privity of contract; and (3) it is possible for the ultimate consumer to establish privity of contract if the manufacturer extends an express warranty to her.

Here, the Plaintiff brings express warranty, implied warranty of fitness for a particular purpose, and implied warranty of merchantability claims.  With regard to the express warranty claim, the Plaintiff claims "the Mylan Defendants made affirmations of fact or promises regarding the safety and effectiveness of the Lee-Livingston Patch (including the safe, time-released delivery of fentanyl), which became part of the basis of the bargain."[6]  (Doc. 1, at 11).  Based upon the Complaint, the Court cannot determine whether the Plaintiff contends an express warranty exists because of affirmations of fact or promises made by the Defendants to Ms. Lee-Livingston's doctor or to Ms. Lee-Livingston.  To the extent the Plaintiff's express warranty claim is based upon affirmations to Ms. Lee-Livingston's doctor, they are dismissed for lack of privity.  To the extent the Plaintiff's express warranty claim is based upon affirmations of fact or promises to her mother, she has asserted a claim upon which relief may be granted

---

[6] The Plaintiff does not provide much information about these affirmations of fact or promises other than they related to the safety and effectiveness of the MFTS patches.  Nevertheless, affirmations of fact or promises can constitute an express warranty pursuant to O.C.G.A. § 11-2-313(1)(a).  While this allegation may be sufficient at the motion to dismiss posture, the Plaintiff eventually must present more evidence of what affirmations of fact or promises were made, so the Court can determine whether the Defendants breached this alleged warranty.

because a manufacturer can extend an express warranty to the ultimate consumer.[7] Because privity is established by the alleged express warranty to the Plaintiff's mother, the Plaintiff also may bring claims for the implied warranties of merchantability and fitness for a particular purpose.

Accordingly, there is no need to address the Plaintiff's argument that Georgia's third-party beneficiary statute, O.C.G.A. § 11-2-318, allows ultimate consumers to enforce the protections of a manufacturer's warranties.

### III.   CONCLUSION

The Defendants' Motion to Dismiss the Plaintiff's Complaint in its entirety on the grounds that it fails to plead her claims with sufficient detail is **DENIED**.  The Defendants' Motion to Dismiss the Plaintiff's negligent misrepresentation and breach of warranty claims on the grounds that they are barred by the learned intermediary doctrine is **DENIED in part and GRANTED in part**.  To the extent these claims are based upon an alleged failure by the Defendants to warn the Plaintiff's mother or otherwise failed to provide the Plaintiff's mother with accurate or sufficient information regarding the use of MFTS patches, the Motion is **GRANTED.**  The Defendants' Motion to Dismiss the Plaintiff's breach of warranty claims on the grounds that there is a lack of privity is **GRANTED in part and DENIED in part**.  To the extent these claims are based

---

[7] Even though the Plaintiff can establish privity by alleging *affirmations of fact or promises* were made to her mother, she cannot base her express warranty claim upon a *failure to provide accurate or sufficient information* regarding the use of MFTS patches to her mother due to the learned intermediary doctrine. The Plaintiff claims the Defendants represented that the MFTS patches were safe and effective although the Defendants knew or should have known the MFTS patches were defective and could release lethal doses of fentanyl into the blood stream.  It is not up to the Court to decide at the motion to dismiss posture where the affirmations of fact or promises to the Plaintiff's mother end and where the failure to provide accurate or sufficient information to her mother begins.  The Court is satisfied that the Plaintiff asserted a breach of express warranty claim by alleging the Defendants made affirmations of fact or promises to her mother which related to the goods and became part of the basis of the bargain.

-12-

upon alleged warranties extended to anyone other than the Plaintiff's mother, the Motion is **GRANTED**.

      **SO ORDERED**, this the 15th day of April, 2011.

<br>

                              S/ Marc T. Treadwell
                              MARC T. TREADWELL, JUDGE
                              UNITED STATES DISTRICT COURT